UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICARDO MIGUEL ZEFERINO BARBOSA,
    Plaintiff,

v.                                              CIVIL ACTION NO. 14-13439-ADB

COMMONWEALTH OF MASSACHUSETTS, et al.,
    Defendants.

REPORT AND RECOMMENDATION ON
DEFENDANTS THOMAS TURCO, BRUCE GELB, STEVEN SILVA
AND MATTHEW VALADE'S MOTION TO DISMISS (#121).

KELLEY, U.S.M.J.

I. <u>Introduction</u>.

Pro se plaintiff Ricardo Miguel Zeferino Barbosa commenced this action on August 22, 2014, and since that time has submitted a plethora of pleadings. After culling through the filings, on July 22, 2016, the district judge to whom this case is assigned determined that the amended complaint (#31) would be the operative pleading. *See* #44. The claims in the amended complaint were clarified and limited to three: "1. The loss and/or destruction of property in conjunction with Barbosa's arrest on November 3, 2013; 2. Deficient conditions of confinement while a pretrial detainee in a facility operated by the Department of Correction; and 3. Deficient conditions of confinement while a pretrial detainee in the Norfolk County Jail." *Id*. at 2-3. The claims alleged against Department of Correction (DOC) personnel, i.e., Carol O'Brien, Osvaldo Vidal and Michael Rodrigues, in the amended complaint (#31) were brought against those defendants in their

individual capacities.[1] (#31 ¶ 24.) Those three DOC defendants have since been dismissed from the case. *See* ##62, 113.

On September 7, 2016, Barbosa's first motion to supplement the pleadings (#45) was granted by the district judge. (#62.)[2] This supplemental pleading was deemed to apply to Thomas Turco,[3] Bruce Gelb,[4] Steven Silva[5] and Matthew Valade,[6] the current so-called DOC defendants, amongst others.[7] Presently before the court is a motion to dismiss (#121) for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., filed by the DOC defendants.

## II. The Applicable Standards.

### A. Fed. R. Civ. P. 12(b)(6).

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5

---

[1] The law is clear "'that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action,' *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir.1991) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L.Ed.2d 45 (1989)), *cert. denied,* 502 U.S. 1063, 112 S. Ct. 948, 117 L.Ed.2d 117 (1992)." *Wang v. New Hampshire Bd. of Registration in Med.,* 55 F.3d 698, 700–01 (1st Cir. 1995); *Negron-Almeda v. Santiago*, 579 F.3d 45, 52 (1st Cir. 2009).

[2] While understanding that the supplemental pleading (#45) would, together with the amended complaint (#31), now be part of a second amended complaint, for the sake of clarity, the amended complaint and the supplemental pleading will be discussed as separate documents.

[3] Turco is identified as the Commissioner of the Department of Correction. (#45 ¶ 7.)

[4] Gelb is identified as the Deputy Commissioner of the Department of Correction. (#45 ¶ 2.)

[5] Silva is identified as the Superintendent of MCI-Souza-Baranowski Correctional Center. (#45 ¶ 7.)

[6] Valade is identified as a correctional officer. (#45 ¶ 2.)

[7] The other two defendants named in the supplemental pleading, Thomas Dickhaut and Michael Rodrigues, have been dismissed from the case. *See* #113.

(1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

B. <u>Fed. R. Civ. P. 8</u>.

Rule 8 mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must include "'enough detail to provide a defendant with fair notice of what the . . . claim is and the grounds upon which it rests.'" *Silverstrand Investments. v. AMAG Pharmaceutical., Inc.*, 707 F.3d 95, 101 (1st Cir. 2013) (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir.

3

2011) (alteration in original) (citation and further internal quotation marks omitted)); *Barbosa v. Commonwealth of Massachusetts*, No. CV 14-13439-ADB, 2016 WL 3976555, at *2 (D. Mass. July 22, 2016). This means that the statement of the claim must "'at least set forth minimal facts as to who did what to whom, when, where, and why.'" *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004)). Although the requirements of Rule 8(a)(2) are minimal, "'minimal requirements are not tantamount to nonexistent requirements.'" *Id.* (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988)).

The plaintiff's obligation to provide the grounds of his claims "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. A court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "only a complaint that states a plausible claim for relief" states a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 679. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not show that "'the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2) in second quotation).

### III. Discussion.

Turco, Gelb, Silva and Valade were not named as defendants in the amended complaint. *See* #31. Their names were not mentioned in the text of that pleading, and no specific claims were alleged against them. *Id*. Given that the claims against the original DOC defendants in the amended complaint were alleged against them personally, the allegations do not transfer to the current DOC

defendants. In short, the amended complaint is irrelevant with respect to Turco, Gelb, Silva and Valade; the operative pleading vis-à-vis these four defendants is the supplemental pleading.[8] (#45.)

In the supplemental pleading, Barbosa alleges that on July 14, 2016, Deputy Commissioner of the Department of Correction, Gelb, "invoked the plaintiff's D.D.U. sanction of 9 month sentence, thereby, opening up a pandora's box of grievances pertaining to 103 CMR 430, but most importantly, the equal protection clause and the emotional distress that is being violated because of Bruce Gelb's decision." (#45 ¶ 2.) Additionally, Barbosa states that he "was under the lifetime supervision that was held unconstitutional under the Cole decision from his release certificate by Bruce Gelb on September 06, 2012." *Id* ¶ 8.[9]

---

[8] While the amended complaint and the three claims limned from that document were determined to be the operative pleading/claims in July of 2016, *see* #44, of necessity that changed in September 2016 when the supplemental pleading (#45) naming new DOC defendants was allowed to be filed, *see* #62. Further, while the district judge allowed plaintiff an extension of time to supplement his response to the motion to dismiss (#127), and Barbosa filed a document (#134) which was docketed as Plaintiff's Response Opposition To 121 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM with Amended Pleading, that document does not mention the DOC defendants. In Plaintiff's Supplemental RESPONSE to Motion re 121 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (#135) only Valade of the DOC defendants is referenced and only regarding the grievance/d-report incident discussed in the text of this Report and Recommendation.

[9] In *Cole,* the defendant pleaded guilty to failure to provide the Sex Offender Registry Board (SORB) with notice of change of address and thereafter filed a motion to correct his sentence based on a challenge to a portion of the sentence imposing community parole supervision for life (CPSL) as a violation of the Separation of Powers Clause under the Massachusetts Declaration of Rights. *Commonwealth v. Cole*, 468 Mass. 294 (2014). The Supreme Judicial Court (SJC) took the case under direct appellate review to determine whether CPSL violated the separation of powers doctrine under art. 30 of the Massachusetts Constitution. *Id*. The SJC concluded that CPSL was unconstitutional. *Id*.

"CPSL subjects a sex offender to intensive parole supervision for life under the oversight of the parole board, which executed the CPSL sentence." *Id*. at 297 (citing G.L. c. 127, § 133(D)(a)). In holding CPSL unconstitutional, the court distinguished between typical parole and CPSL. *Id*. at 298-301. The former "provides prisoners with the opportunity to serve the balance of their term of imprisonment outside a prison provided that they comply with the conditions established by the parole board." *Id*. at 298. "[T]he authority of the parole board is limited to release of custody of a defendant *within* the maximum term of imprisonment imposed by the sentencing judge." *Id.* at 299 (emphasis in original). In other words, the parole board only has authority to revoke parole where the prisoner is still serving his sentence imposed by a judge; the parole board has no power to extend the maximum term mandated by the sentencing judge. *Id*. Under CPSL, the parole board is obliged to impose mandatory terms of imprisonment for violations of condition of CPSL by qualified sex offenders that occur after the sex offender has finished serving his or her original sentence. *Id*. The SJC held that CPSL, by permitting the parole board to extend original sentences,

Although plaintiff's pro se status entitles his pleadings to be viewed liberally, *see Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008) (noting that pro se pleadings are held to less demanding standards than those drafted by lawyers), pro se status does not exempt plaintiff from compliance with relevant rules of procedure. *See, e.g., Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) (stating that pro se litigants are not exempt from procedural rules; *Ahmed v. Rosenblatt*, 118 F.3d 886 (1st Cir. 1997). Plaintiff's supplemental pleading with respect to Gelb fails to meet the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. It is unclear what Barbosa is claiming Gelb did, or did not do, that purportedly violated his constitutional rights; there simply is no factual predicate alleged for any such claim. The contention that the imposition of a D.D.U. sanction violated the equal protection clause is conclusory, as is the global reference to 103 CMR 430, which encompasses all the Massachusetts regulations on inmate discipline. In the absence of any detail or even minimal facts, plaintiff has failed to allege a plausible claim for relief against Gelb.

Barbosa complains that Matthew Valade was a "harassing correctional officer" who apprised other inmates of the charges against Barbosa and his court status. (#45 ¶ 2.) Barbosa claims to have filed a grievance against Valade on May 5, 2016, and, in return, Valade allegedly wrote a "frivolous" disciplinary report against Barbosa and he was removed to segregation. *Id*. Because "the d-board kept rescheduling his hearing . . . plaintiff copped out to be removed from the building as there was nowhere else to be housed." *Id*.

---

unequivocally interfered with the judiciary's power to impose sentences against criminal defendants, and therefore was a violation of separation of powers pursuant to art. 30 of the Massachusetts Declaration of Rights. *Id.* at 301-308.

    Here, Barbosa alleges that he "was under the lifetime supervision that was held unconstitutional by the decision in Cole*,*" (#41 ¶ 8), in the context of a claim against Gelb. No facts are alleged to show how Gelb, a DOC employee, would have played a role in any decision concerning plaintiff's parole as such decisions are made by the courts and the parole board.

Plaintiff's May 5, 2016[10] grievance does not mention any individual by name. (#45-2 at 4.) Rather, Barbosa contended that the IMS[11] incorrectly reflected that he was "charged with a 12t under section 22 of MGL Chapter 265"[12] and that he wanted the record corrected because other inmates were being informed of the charge "by staff." *Id.* Similarly, the appeal form for the May 5th grievance dated May 24, 2016, references "a certain correctional officer"; once again, no individual is named. *See* #45-2 at 3. On June 13, 2016, Valade issued a disciplinary report, #366096, against Barbosa, for "being in possession of a manufactured weapon." *Id*. As the plaintiff himself alleged, the record shows that he pled guilty to the charge. (#45 ¶ 2 ("plaintiff copped out"); #122-1 at 5-6.[13]) Even if the court were to assume that the unnamed correctional officer in plaintiff's May 2016 grievance and appeal was Valade, and that Valade issued the June 2016 d-report in retaliation, by Barbosa's own admission he pled guilty to the charge of possession of a

---

[10] The date of the grievance is actually May 6, 2016, referencing events on May 5, 2016. *See* #45-2 at 4.

[11] Plaintiff fails to identify what "the IMS" is.

[12] Massachusetts General Laws chapter 265 § 22 is a rape statute.

[13] Docket number (122-1) are exhibits filed with defendants' motion to dismiss. Specifically, pages 5-6 of Exhibit 2 is the Valade disciplinary report which reflects that Barbosa pled guilty. The First Circuit has repeatedly cautioned that "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Graf v. Hospitality Mut. Ins. Co.,* 754 F.3d 74, 76 (1st Cir. 2014) (internal citation and quotation marks omitted). That being said, "[w]hen . . . a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Service, Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (internal citations, quotation marks and alterations omitted), *cert. denied*, 555 U.S. 995 (2008); *Yacubian v. U.S.*, 750 F.3d 100, 102 (1st Cir. 2014); *United Auto., Aerospace, Agr. Implement Workers of America Intern. Union v. Fortuno*, 633 F.3d 37, 39 (1st Cir. 2011). The exhibits in (#122-1) fall within the parameters of this exception and may properly be considered. *See, e.g., Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993) ("[C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint.").

weapon. Nothing in the allegations against Valade supports a claim for a violation of plaintiff's constitutional rights.

The totality of the allegations against Turco are: He was added as a defendant because Barbosa "sent notice pursuant to M.G.L. c. 258 § 4 presentment claim letter to him," (#45 ¶ 7), and he is being sued in his personal capacity "for violation of the 4th, 5th, 6th, 8th amendments." *Id.* at 10. These allegations are facially inadequate to meet the requirements of Rule 8 or to state a claim.

With respect to Silva, he denied the appeal of plaintiff's grievance in July, 2016. *Id.* Silva was purportedly added as a defendant "due to numerous requests for contact's [sic] visits, barbershop, religious service, law library, classification transfer to medium security or to a regular housing unit where he was housed in L1 unit and not afforded the same opportunity as the general population inmates." *Id*.

The allegations against Silva are essentially those advanced in a proposed addendum (#36) which the district court declined to consider as part of the operative pleading. (#44 at 3-4.) The district court directed plaintiff that, should he "seek to assert these claims in this action, he must include a proposed supplemental pleading in which he identifies individual actors who participated in the alleged misconduct and the actions of each of those persons." *Id.* at 4. While Barbosa inserted Silva's name in the supplemental pleading, he has added no facts regarding Silva's conduct.[14] It is unknown how Silva was involved in plaintiff's "numerous requests for contact's [sic] visits, barbershop, religious service, law library, classification transfer to medium security or to a regular housing unit where he was housed in L1 unit and not afforded the same opportunity as the general

---

[14] While Barbosa does allege that Silva denied the appeal of his grievance in July, 2016, there are no facts alleged from which it could be found or inferred that this conduct was in some way wrongful or unconstitutional. (#45 ¶ 7.)

8

population inmates,"[15] or what about Silva's conduct was purportedly unconstitutional. Having failed to identify the purported misconduct of Silva, and how those actions allegedly violated the law, the claims against Silva must fail.

IV. Recommendation.

For the reasons stated, I RECOMMEND that Defendants Thomas Turco, Bruce Gelb, Steven Silva and Matthew Valade's Motion To Dismiss (#121) be ALLOWED.

V. Review by District Court Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st

---

[15] There are three relevant documents in the exhibit attached to the supplemental pleading related to the allegations against Silva. In the first, Silva responded to a grievance filed by Barbosa by denying the grievance and stating, "Due to your 52A status, 103 CMR 420 is not applicable and therefore you will not be transferred to OCCC. Additionally, you are currently being held in a transition unit, not a disciplinary unit. Inmates are reviewed weekly and should you be deemed eligible and suitable you will be considered for transfer to a different housing unit." (#45-2 at 6.) In the second, Silva responded to Barbosa's letter regarding his housing assignment by informing him that he was not eligible for lower custody based on his disciplinary history. (#45-2 at 9.) In the third, Silva concurred with the denial of Barbosa's grievance regarding the transfer of his property from the Essex County Correctional Center to Souza-Baranowski Correctional Center because "[t]he Essex County Jail does not forward property to state facilities. [Barbosa] or a family member must make arrangements with the county to retrieve your items." (#45-2 at 23.) It cannot be inferred from these documents that Silva engaged in any wrongdoing as the denials were apparently administrative decisions made pursuant to prison policies and regulations. None of these denials could be viewed as facially unconstitutional.

Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

|  |  |
|---|---|
| April 10, 2017 | /s / M. Page Kelley<br>M. Page Kelley<br>United States Magistrate Judge |